## St. Louis, Peoria & Northern Ry. Co. v. Eliza Rawley, Adm'x.

1. EVIDENCE—*Care and Caution May be Proved by Circumstantial Evidence.*—Direct evidence of due care is not necessary. Care and caution may be proved by circumstantial evidence.

2. RAILROADS—*When Traveler Has a Right to Rely upon the Giving of Statutory Signals.*—When the traveler knows that the law requires a railroad company to ring a bell or sound a whistle, he has a right to rely upon the performance of such duty by the company.

3. INSTRUCTIONS—*Disregarding Testimony of Witness Swearing Falsely.*—An instruction that if the jury believes that any witness or witnesses have willfully sworn falsely to any material fact the jury may disregard the testimony of such witness or witnesses so far as the jury believe it to be false, is not misleading.

**Trespass on the Case.**—Death from negligent act. Error to the City Court of East St. Louis; the Hon. SILAS COOK, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed March 2, 1903.

This was an action brought against plaintiff in error for causing the death of Edward Rawley in a collision on a road crossing in St. Clair county, about 10 o'clock P. M., July 16, 1898. The declaration has three counts. The first count charges that while the deceased was driving his horse, attached to a surrey, along said highway at the crossing of defendant's track, the defendant negligently ran its engine and train of cars upon said crossing without any signal or warning, and struck said surrey, and so injured said Rawley that he died. The second charges a failure to give statutory road-crossing signals, and the third count is similar to the first, with allegations of no bell or whistle; except it also charges plaintiff in error with negligently suffering weeds and shrubs to obstruct the view, and that this "directly contributed" to cause his injury and death.

All the counts allege that Rawley was in the exercise of due care. The plea was not guilty.

The case has been four times tried by jury. The first trial resulted in a verdict for plaintiff for $4,208.33.

Defendant moved for a new trial, which motion the court allowed. At the August term, 1899, the case again came on trial and resulted in a verdict for plaintiff for $5,000, on which the court rendered judgment, and the defendant prosecuted an appeal to the Appellate Court, Fourth District, where the judgment was reversed and the cause remanded. (90 Ill. App. 653.) At the August term, 1901, the case was again tried, but the jury failed to agree. At the March term, 1902, the case was again tried and resulted in a verdict for plaintiff for $5,000, on which verdict the court gave judgment, to reverse which defendant prosecutes this writ of error. Rawley was killed about 10 o'clock P. M., on a dark Saturday night, on a road crossing two miles north from East St. Louis Relay Depot. He was in a buggy, and had with him a young woman, who was also killed. They left his house to go to Granite City. The highway crossed the track about ninety feet south of where the Wabash track crosses it. The train which struck him had made the statutory stop for Wabash crossing, about 250 feet south of it, and about 150 feet south of this road crossing, and was running slowly when it reached the highway. It stopped within fifty-five or sixty feet beyond the point of collision. The track was on a grade twelve or fourteen feet high, and the train was going north. The buggy came onto the track from the west on the fireman's side, and was going east. The fireman was the only one who saw the people before they were struck. The woman was on the north side of the buggy and Rawley on the south side. He was facing the woman, with his back toward the engine. As soon as the fireman saw the horse he told the engineer to stop, and at the same time " hollered to the people on the outside." The engineer immediately applied the air brakes, and did everything possible to avoid a collision. When the fireman saw and called to Rawley, instead of drawing his horse back off the west side of the track on which the horse had just stepped, he whipped the horse forward across the track, and his buggy was

struck thereon by the engine and he and the woman thereby killed.

There is a conflict in the evidence as to giving the statutory signals when approaching a crossing.

Deceased was a switchman on the "Clover Leaf," the tracks of which were parallel with and within 100 feet of the track where he was killed, and understood the situation of the tracks and crossing. There was a bunch of weeds fifteen to twenty feet square, and quite high, just south of the crossing.

Photographs in evidence tend to show that a person, by looking, could have seen a train approaching from the south for a considerable distance. There was a bright headlight on the engine.

The defendant at the close of the evidence for plaintiff, and again at the close of all the evidence, tendered an instruction to find for the defendant, which the court refused. The propriety of such ruling is one of the controverted questions raised by motion for new trial and assignment of errors.

C. L. CONKLING and FREELS & JOYCE, attorneys for plaintiff in error.

A. R. TAYLOR, attorney for defendant in error.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

The case was tried under the following agreement:

"It is agreed by and between the parties that testimony of witnesses on the former trial of this case may be read in evidence in this trial with the same effect as if the witnesses were present and testifying from the witness stand."

The judgment rendered at the former trial was reversed for errors which do not appear in the present record. (90 Ill. App. 653.) One of these errors was the refusal to give an instruction asked by defendant, which limited the application of evidence introduced to prove that weeds were on the side of the road leading to the crossing, which, although

not on the right of way, obstructed the view of the track. The contention of defendant was, that if there were weeds, not on the right of way, which obstructed the view, that this did not constitute negligence on the part of defendant.

At the trial from which this appeal was taken an instruction was given which limited the application of this evidence. It limited it to proving the environment as affecting only the issue of care and caution on the part of the deceased. It is now urged by plaintiff in error, that this limitation by instruction was not sufficient, and that the evidence should have been limited when introduced, citing I. C. R. R. Co. v. Souders, 178 Ill. 585. That decision does not sustain appellant's criticism. The decision recognizes the fact that errors occurring in the course of a trial may be cured, and improper influences avoided, by rulings of the court.

It may be said in addition, that the record does not show that any request was made at the trial, to limit the application of the evidence. A general objection was urged upon the ground that the evidence was immaterial. This objection was properly overruled. The evidence was competent and material as showing the general situation and environment. This was proper to be considered upon the issue of due care and caution on the part of the deceased in driving to the crossing.

The evidence objected to, also tended to prove that there were high weeds growing on the right hand side of the approach to the track, which extended to within a few feet of the track. This evidence was competent generally, both on the issue of negligence of defendant and on the issue of ordinary care of the deceased.

The main insistence of plaintiff in error is, that the court erred in not instructing the jury to find for defendant. This presents an issue of fact which has already been considered by this court upon a similar record. (90 Ill. App. 653, *supra*.) For this reason it might now be passed without comment. But as the evidence bearing upon the issue was not discussed in the decision cited, a brief reference to it will now be made.

There is evidence which, if true, fairly tends to prove negligence on the part of plaintiff in error. Witnesses testify that the statutory signals for a crossing were not given. Others testify that they were given. In such cases of conflict, this court can not assume to say that the finding of the jury is not sustained. There is also evidence that the approach to the track crossing was steep and that there were high weeds extending to within a few feet of the track, which hindered the view of a train approaching from the south. This latter evidence is corroborated, to some extent, by the testimony of the fireman, that he "was a dark horse coming up on the track when I first saw him." The fireman was on the left side of the engine and nearest to the deceased. The engineer saw nothing until the fireman called out. The headlight was burning. If these servants of plaintiff in error, with a train running only four to six miles an hour, did not see a horse and surrey until the horse " was coming up on the track," it tends to show that there must have been weeds close to the track which obstructed the view.

If the statutory signals were not given, and if there were weeds permitted to stand on the right of way and so close to the track as to obstruct the view, the jury was warranted in finding that the defendant was negligent.

There is no direct evidence that the deceased was exercising due care and caution, and this is an allegation necessary to be proved. But direct evidence of due care is not necessary. Care and caution may be proved by circumstantial evidence. (C. & E. I. R. R. Co. v. Beaver, 199 Ill. 34.)

It was for the jury to say whether the circumstances proved, warranted the inference of due care. Two juries have found that they did warrant such inference. The mouths of the parties killed are closed. There is no presumption that they willfully and recklessly risked their lives. The natural presumption is to the contrary.

" The natural instinct prompting to the preservation of life and the avoidance of injury, and consequent suffering

and pain, may also enter into the consideration of the jury in determining the question." C. & E. I. R. R. Co. v. Beaver, *supra*.

The evidence indicated that they were enjoying themselves and desired to live rather than to die. Rawley knew the location of the tracks, the character of the crossing and the danger of meeting trains. He must have known, too, from his experience as a railroad employe, that statutory signals were required to be continuously given before reaching a crossing. He had a right to presume that they would be given.

"Where the traveler knows that the law requires a railroad company to ring a bell, or sound a whistle, he has a right to rely upon the performance of such duty by the company." Chi. C. Ry. Co. v. Fennimore, 199 Ill. 17.

It was ten o'clock at night, a time when everything is comparatively still. If these signals were not given, he might reasonably have presumed that no train was approaching.

It is urged as negligence, that as he drove up the approach to the track he was facing his companion, with his back toward the train. If this was so, and he was facing his companion, she would naturally be facing him, and thereby looking toward the train. If she had seen it, would she not have called his attention to it? Or, if the bell or whistle was sounding, the engine being then close to the crossing, would she not have heard the signals? The engine was close to the crossing when the deceased was seen coming up to the track. The engineer puts the distance at twenty feet when he saw the horse's head, and he saw it when the fireman " hollered."

The horse was coming up on the track when first seen, and passed over the track uninjured. These circumstances tend to corroborate the testimony of witnesses that the statutory signals were not given, and also that the view to one driving up the steep approach to the crossing was materially obstructed. If these conditions existed they bear upon the issue of due care and caution. We can not say, as a matter of law, that the failure to look for an

approaching train is negligence. Nor can we say as a matter of fact, in the face of the verdict of two juries, that if the signals required by law were not given, that ordinary care would have required the deceased to look to see if a train was coming, when he knew by experience that signals were required to be given, and that if given he could hear them.

It is argued that when the fireman "hollered" to the deceased, that instead of pulling his horse off to the left, he urged him on in an effort to cross the track. This shows that the deceased, though unwisely, tried to avoid a collision. The evidence is that the horse crossed in safety, the surrey alone being struck. When the deceased heard the fireman's call, it was a moment of deadly peril. At such a moment the law does not exact, nor does common sense expect, deliberate and wise judgment.

Assuming that the jury found that the negligence of plaintiff in error, charged in the declaration, was proved, and that their finding is sustained by the evidence, the question is this: does due care, which is ordinary care under the circumstances, require one approaching a crossing, when the view is obstructed by weeds growing close to the track, and when no statutory signals have been heard, when the circumstances indicate that they would be heard if given, to get out of his wagon and come near enough to the track to satisfy himself that there is no train coming.

It may be admitted that if this issue of due care and caution came before us as a primal question, upon the printed evidence, that we would be inclined to hold that care and caution were not proved. But this issue does not so come. In two cases, closely contested, two juries have, by their verdicts, found due care and caution to have been proved. Two motions for new trial have been overruled, and judgments rendered on verdicts. Under these conditions we are not justified in setting aside a verdict which must be based upon a conclusion that plaintiff in error was negligent, and that deceased was not.

Counsel for plaintiff in error say of the second instruc-

tion for defendant in error, that it assumes in effect the existence of impeaching evidence against witnesses, when there was no such evidence before the jury. Such assumption is claimed to be in these words:

"If the jury believe, from all the evidence in the case, that any witnesses or witness have willfully sworn falsely to any material fact in this case, the jury may disregard testimony of such witness or witnesses, as far as the jury may believe it false."

The objection urged is that "this instruction is without the qualification ' unless such witness or witnesses were corroborated by testimony of other credible witnesses;' and it assumes as proved, facts not in evidence in this case, and was improper and misleading."

While no formal impeachment of any witness was attempted, there were witnesses whose testimony directly conflicted.

If the jury believed that this conflict came through willful false swearing, the instruction was applicable to the witness or witnesses so swearing.

The omission of the qualifying clause "were corroborated by other testimony of other credible witnesses" is not fatal to an instruction worded as the one under consideration. If it had said that the testimony of a witness who had willfully sworn falsely to any material point in controversy could be entirely disregarded, the case of Goeing v. Outhouse, 95 Ill. 347, cited by appellant, would apply. What it does say is, that if the jury believes that if any witness or witnesses have willfully sworn falsely to any material fact, the jury may disregard the testimony of such witness or witnesses, so far as the jury believe it to be false. This is the duty of a jury, and the instruction is not misleading.

The third instruction is not open to the criticism made by counsel.

Finding no error in the record, the judgment of the court is affirmed.